# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| | § | |
| v. | § | Case No.  4:13-CR-281 (21) |
| | § | Judge Mazzant |
| | § | |
| EVERADO SANCHEZ | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant's *Pro Se* Motion to Reduce Sentence – First Step Act (Compassionate Release) (Dkt. #1888).  Having considered the motion, the response, and the applicable law, the Court finds that the motion will be **DENIED**.

## BACKGROUND

On March 6, 2015, Defendant Everado Sanchez ("Sanchez") pleaded guilty to a violation of 21 U.S.C. § 846—Conspiracy to Possess with Intent to Manufacture and Distribute Methamphetamine (Dkt. #829 at p. 1).  On September 2, 2015, the Court sentenced Sanchez to 210 months of imprisonment followed by a 5-year term of supervised release (Dkt. #1419).  Sanchez is currently serving his sentence at FCI Oakdale II with a project release date of December 20, 2028 (Dkt. #1898 at p. 1).  The projected release date takes into consideration the fact that Sanchez has received credit for good conduct (Dkt. #1898, Exhibit 1 at p. 3).

On June 16, 2022, Sanchez filed the pending motion for compassionate release, where he now seeks a sentence reduction based on "extraordinary and compelling reasons," which Sanchez states is health related (Dkt. #1888).  This is not Sanchez's first request related to health issues, as the Court has previously rejected a similar argument by Sanchez (Dkt. #1879).  However, in this motion, he specifically alleges that he is entitled to relief under 18 U.S.C. § 3582(c)(1)(A) for a

multitude of health reasons, which include:

> [T]he Global C[OVID]-19 Pandemic, combined with his serious Long-C[OVID] health conditions and combined with the conditions of his imprisonment, which are exceptionally harsh, he has not received adequate medical care or service while imprisoned, also the extraordinary punitive conditions, the lack of rehabilitative services available to him.

(Dkt. #1888 at pp. 1–2).  On July 14, 2022, the Government responded to Sanchez's request, arguing that Sanchez cannot meet the "extraordinary and compelling reasons" requirement, among other reasons why the Court should deny the pending motion.

## LEGAL STANDARD

### I.    18 U.S.C. § 3582(c)(1)(A)

A judgment of conviction imposing a sentence of imprisonment "'constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)); *see also* 18 U.S.C. § 3582(c).  One such circumstance arises from 18 U.S.C. § 3582(c)(1)(A)(i), commonly referred to as compassionate release.

Section 3582(c) was enacted as part of the Sentencing Reform Act of 1984.  Under the first iteration of the relevant provision, district courts were authorized to grant sentence reductions on the motion of the Director of the Bureau of Prisons ("BOP") if the BOP could establish the following conditions: (1) extraordinary and compelling reasons warranted a sentence reduction; (2) a reduction would be consistent with the applicable policy statements of the Sentencing Commission; and (3) a sentence reduction was warranted after consideration of the sentencing factors in 18 U.S.C. § 3553(a).  *United States v. Shkambi*, 993 F.3d 388, 391 (5th Cir. 2021). Notably, Congress did not define "extraordinary and compelling reasons" or otherwise indicate how that phrase should be interpreted other than to specify that rehabilitation alone did not qualify. *Id.* (quoting 28 U.S.C. § 994(t)).  Instead, Congress delegated that authority to the Sentencing

Commission, directing it to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t).

The Sentencing Commission eventually followed Congress's direction to define "extraordinary and compelling reasons" and promulgated United States Sentencing Guidelines ("U.S.S.G.) § 1B1.13.  In application note 1 to § 1B1.13, the Sentencing Commission described what circumstances constitute "extraordinary and compelling reasons" for purposes of § 3582(c)(1)(A)(i).  U.S.S.G. § 1B1.13 cmt. n.1.  The Sentencing Commission essentially created four categories of "extraordinary and compelling reasons," which can broadly be characterized as: (1) circumstances arising from certain medical conditions; (2) circumstances arising from the age of the defendant;[1] (3) issues arising from the defendant's family circumstances;[2] and (4) other reasons that the BOP agrees are extraordinary and compelling in a specific case.  *Id.*  And because § 3582(c)(1)(A) requires that any sentence reduction be consistent with the Sentencing Commission's policy statements issued pursuant to § 994(t), the policy statements contained in § 1B1.13 were binding on district courts considering § 3582(c)(1)(A)(i) motions.  *See United States v. Garcia*, 655 F.3d 426, 435 (5th Cir. 2011) (holding that the Sentencing Commission's policy statements issued pursuant to 28 U.S.C. § 994 are binding on district courts when considering motions brought under 18 U.S.C. § 3582(c)).

In 2018, Congress amended § 3582(c)(1)(A) with the passage of the First Step Act.  The

---

[1] Specifically, a defendant, who is at least 65 years old, who "is experiencing a serious deterioration in physical or mental health because of the aging process" and also "has served at least 10 years or 75 percent of his or her term of imprisonment" may meet the requirement that "extraordinary and compelling reasons" exist.  U.S.S.G. § 1B1.13, cmt. n.1(B).

[2] Such family circumstances exist where: (1) a defendant has minor children whose caregiver dies or becomes incapacitated; or (2) "incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner."  U.S.S.G. § 1B1.13, cmt. n.1(C).

amendment provided that, in cases where the BOP does not file a compassionate-release motion on the prisoner's behalf, the prisoner may personally file a motion for compassionate release. *Shkambi*, 993 F.3d at 391–92.  This was the First Step Act's only change to the compassionate-release framework.  *Id.* at 391.  Thus, while prisoners, in addition to the BOP, may now file motions for compassionate release, § 3582(c)(1)(A)(i)'s substantive requirements that govern a prisoner's entitlement to release remain the same.  *See id.* at 392 ("But the [First Step Act] left undisturbed the other three § 3582 requirements.").

Following the First Step Act's expansion of who may file a motion under § 3582(c)(1)(A), courts were confronted with the question of whether the Sentencing Commission's definition of "extraordinary and compelling reasons," which was promulgated prior to the First Step Act when such motions could only be filed by the BOP, remained binding on district courts when considering compassionate-release motions.  The Fifth Circuit addressed this question in *Shkambi*, holding that, while U.S.S.G. § 1B1.13 is a policy statement applicable to § 3582(c)(1)(A) motions filed by the BOP, it is inapplicable to § 3582(c)(1)(A) motions filed by prisoners.  993 F.3d at 392.[3] Accordingly, while U.S.S.G. § 1B1.13 dictates the meaning of "extraordinary and compelling reasons" when a § 3582(c)(1)(A) motion is filed by the BOP on a prisoner's behalf, it does not do so when, as here, a § 3582(c)(1)(A) motion is filed by a prisoner himself.  *See id.* ("[T]he policy statement continues to govern where it says it governs—on the motion of the Director of the [BOP].  But it does not govern here—on the newly authorized motion of a prisoner."  (internal quotations omitted)).  Therefore, when a prisoner files a compassionate-release motion, courts

---

[3] Several other circuits have similarly concluded that U.S.S.G. § 1B1.13 is inapplicable to such compassionate-release motions filed by prisoners.  *See, e.g., United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021) (per curiam); *United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020); *United States v. Brooker*, 976 F.3d 228, 230 (2d Cir. 2020).  *But see United States v. Bryant*, 996 F.3d 1243, 1248 (11th Cir. 2021) (holding that U.S.S.G. § 1B1.13 is an applicable, binding policy statement for all § 3582(c)(1)(A) motions).

must determine what constitutes an "extraordinary and compelling reason" under § 3582(c)(1)(A)(i).

## II.    Extraordinary and Compelling Reasons

Though the Court is not bound by the Sentencing Commission's policy statement in U.S.S.G § 1B1.13 and its accompanying application notes when considering compassionate-release motions filed by prisoners, the policy statement is not wholly irrelevant.  Courts should still look to the policy statement for guidance in determining what constitutes "extraordinary and compelling reasons" for a sentence reduction when a prisoner files a compassionate-release motion.  *See United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021) ("Although not dispositive, the commentary to the [U.S.S.G.] § 1B1.13 informs our analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release."); *see also, e.g., United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020) ("The substantive aspects of the Sentencing Commission's analysis in § 1B1.13 and its Application Notes provide a working definition of 'extraordinary and compelling reasons'; a judge who strikes off on a different path risks an appellate holding that judicial discretion has been abused.").  Using the policy statement as guidance when considering prisoner-filed compassionate-release motions is warranted for several reasons.

First, whether a compassionate-release motion is filed by the BOP or a defendant, the statutory standard governing the motion is the same.  Section 3582(c)(1)(A) provides that its requirements for obtaining a sentence reduction apply "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant."  18 U.S.C. § 3582(c)(1)(A).  And as noted above, the First Step Act did not change § 3582(c)(1)(A)'s substantive requirements.  Thus, a policy statement defining "extraordinary and compelling reasons" in the context of BOP-filed motions

necessarily informs what "extraordinary and compelling" means in the context of defendant-filed motions because the same standard governs both motions.  In other words, § 3582(c)(1)(A)(i)'s "extraordinary and compelling reasons" phrase does not implicate shifting substantive meanings depending on who invokes the statute.

Congress's application of a single standard to govern § 3582(c)(1)(A) motions—whether filed by the BOP or by defendants—is also evident in § 3582(c)(1)(A)'s exhaustion requirement. Before a prisoner can file a compassionate-release motion, he must first present his case to the BOP and request that the BOP file the motion on his behalf.  *See* 18 U.S.C. § 3582(c)(1)(A). Fulfilling this exhaustion requirement would be a nonsensical exercise if the standard governing the defendant's entitlement to release varied significantly depending on whether the BOP grants the defendant's request.  Defendants would request compassionate release based on the interpretation of "extraordinary and compelling reasons" applicable to their motions while the BOP would evaluate such requests based on the interpretation applicable to its motions.  The fact that defendants must first ask the BOP to file their compassionate-release motions before doing it themselves indicates that Congress intended no significant substantive distinction between BOP-filed and defendant-filed motions under § 3582(c)(1)(A).

Indeed, § 1B1.13 does not become useless as guidance for defendant-filed compassionate-release motions simply because its terms state that it applies to motions brought by the Director of the BOP.  Rather, § 1B1.13 and its accompanying application notes "provide a working definition of 'extraordinary and compelling reasons'" because the standard applies equally to BOP motions and prisoner motions.  *Gunn*, 980 F.3d at 1180.  When the Sentencing Commission promulgated § 1B1.13, its intent was not to specify a unique standard for BOP motions but rather to define "extraordinary and compelling reasons" for purposes of § 3582(c)(1)(A).

Further, 28 U.S.C. § 994(t) does not direct the Sentencing Commission to adopt standards governing prisoner motions and standards governing BOP motions.  Rather, § 994(t) directs the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction" under § 3582(c)(1)(A).  And as the Sentencing Commission itself has explained, U.S.S.G. § 1B1.13 and its application notes constitute the Commission's implementation of § 994(t)'s directive.  *See* U.S.S.G. § 1B1.13 cmt. background ("This policy statement implements 28 U.S.C. § 994(a)(2) and (t).").  Because § 3582(c)(1)(A) governs BOP motions and prisoner motions alike, the Sentencing Commission's definition of § 3582(c)(1)(A)'s terms is instructive when considering a prisoner's motion brought under § 3582(c)(1)(A)(i).

For these reasons, the Court concludes that the "extraordinary and compelling reasons" applicable to defendant-filed motions are generally those that are similar in kind and scope to those listed in U.S.S.G. § 1B1.13's application notes.  To be clear, the "extraordinary and compelling reasons" contained in the Sentencing Commission's policy statement are neither exhaustive nor binding on the Court.  *Shkambi*, 993 F.3d at 392.  But, in any event, the Court's analysis of whether Defendant has presented "extraordinary and compelling reasons" warranting the sentence reduction he seeks will be significantly guided—though not strictly bound—by the Sentencing Commission's description in U.S.S.G. § 1B1.13 and the accompanying application notes.

### III.    18 U.S.C. § 3553(a) Factors

Even if extraordinary and compelling reasons exist, they must outweigh the 18 U.S.C. § 3553(a) factors to warrant sentence reduction.  *See* 18 U.S.C. § 3582(c)(1)(A).  These factors are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and sentencing range [provided for in the U.S.S.G.] . . .

(5) any pertinent [Sentencing Commission] policy statement . . .

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

*Id.* § 3553(a).

## ANALYSIS

Sanchez requests compassionate release based on his medical conditions that place him at "heightened risk of experiencing severe illness or death from C[OVID]-19's variants" (Dkt. #1888 at p. 5). Specifically, Sanchez points out that the culmination of factors such as the "serious side effects" of the vaccine, the possibility of lingering COVID-19 symptoms, and the condition of his confinement together warrants a sentence reduction (Dkt. #1888 at pp. 5–10). The Government argues that the Bureau of Prisons ("BOP") has adequately contained the COVID-19 issue at the FCI Oakdale II facility and that Sanchez himself does not suffer from any major health issues that would constitute an extraordinary and compelling reason for release (Dkt. #1898 at pp. 3–7). The Court will address the merits of Sanchez's arguments, however, the Court will first address whether Sanchez has exhausted his administrative remedies.

8

I.      **Sanchez Has Satisfied § 3582(c)(1)(A)(i)'s Exhaustion Requirement**

Courts may not consider a modification to a defendant's sentence under § 3582(c)(1)(A)(i) unless a motion for such a modification is properly made by the Director of the BOP or by a defendant who has fully exhausted their administrative remedies.   18 U.S.C. § 3582(c)(1)(A). Since Sanchez's motion is a defendant-filed motion, the Court may only consider his motion for compassionate release if he first meets § 3582(c)(1)(A)'s exhaustion requirement.   Fully exhausting administrative remedies requires a denial by the warden of a defendant's facility or waiting thirty days without receiving a response to a request, whichever is earlier.  *Id.*  Section 3582(c)(1)(A)'s exhaustion requirement is not waivable.  *See United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020) ("Because the statutory language is mandatory—that a prisoner must exhaust their BOP remedy before filing in district court—we must enforce this procedural rule . . . .").

In the pending motion, Sanchez states, and the Government agrees, that he submitted a request for compassionate release to the warden on March 24, 2022 (Dkt. #1888, Exhibit 1). Because more than thirty days have passed since Sanchez's request, Sanchez has satisfied § 3582(c)(1)(A)'s exhaustion requirement (Dkt. #1898 at p. 3).

II.     **Sanchez's Medical Conditions Are Not "Extraordinary and Compelling" Reasons**

Sanchez argues that his medical conditions constitute extraordinary and compelling reasons to reduce his sentence and grant his release.   Although Sanchez has satisfied § 3582 (c)(1)(A)'s exhaustion requirement, the Court agrees with the Government that his argument does not raise any issue that the Court finds as an extraordinary and compelling reason.  Sanchez fails to identify any specific health conditions that apply to him that warrant compassionate release.  In fact, the Court views most of Sanchez's argument as a general reason why COVID-19 related issues *could* constitute a valid reason for release rather than an individualized reason why Sanchez

himself should be released.  As an example, Sanchez states that "older people . . . are more likely to experience lingering C[OVID]-19 symptoms," however, Sanchez failed to present evidence that he is experiencing any lingering COVID-19 symptoms (Dkt. #1888 at p. 6).

When considering if a defendant's health condition supports compassionate release, the mere existence of COVID-19 in society cannot independently justify a sentence reduction.  *See United States v. Miller*, No. 2:17-CR-015-D, 2020 WL 2514887, *2 (N.D. Tex. May 15, 2020) (citing *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)).  For a defendant to be granted compassionate release based on COVID-19, defendant must have a serious comorbidity and evidence the facility is not effectively controlling the spread of the virus.  *See United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("General concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a sentence.").  Sanchez cannot prove either of those factors here.

In the Government's response, they point out two key facts that ultimately decide Sanchez's case.  First, the Government states that Sanchez was given a medical evaluation and that he was classified as Care Level 1, meaning that he is less than 70 years old and generally considered a healthy person (Dkt. #1898 at p. 4).  Care Level 1 patients are grouped as either being "healthy" or needing "simple chronic care," meaning that Sanchez may have limited medical needs that can be easily managed by clinician evaluations every six to twelve months.  *See United States v. Hill*, No. 4:18-CR-233(13), 2022 WL 2392453, at *5 (E.D. Tex. July 1, 2022) (finding that inmate who was classified as Care Level 2 was not entitled to compassionate release based on health conditions because her health could be managed through routine care).  Those patients are generally considered not to be a problem by the BOP, and the Court will not grant compassionate

10

release on the mere speculation that Sanchez might suffer from a medical problem in the future. This is especially true since Sanchez's medical records do not show any indication that he is suffering from any long COVID symptoms, as he argues in his motion (Dkt. #1898 at p. 3). Sanchez does not provide any evidence showing he is subject to a terminal illness or anything even close to that stage. Granting compassionate release to Sanchez based on the facts presented would require the Court to ignore Sanchez as he is now, and merely grant it because he may suffer from medical conditions in the future. The Court declines to establish such a precedent.

The second fact that the Government points out is the recently, FCI Oakdale II has been rather successful in controlling the spread of the virus. In fact, at the time of filing its response, not a single prisoner out of the 1,166 inmates placed in the FCI Oakdale II facility had a positive diagnosis of COVID-19 (Dkt. #1898 at pp. 5–6). Sanchez argues that because there was a severe COVID-19 outbreak back in March of 2020, it warrants release in 2023 (Dkt. #1888 at p. 9). However, again, the Court points out that this argument is overbroad, as any current prisoner at FCI Oakdale II could make that very argument. Sanchez fails to identify how the current conditions of FCI Oakdale are not satisfactory. The Government points out the BOP's plan to help stop the spread of the virus, which includes how new inmates are quarantined as well as the number of vaccinated staff members and inmates at the FCI Oakdale facilities (Dkt. #1898 at pp. 4–7). The Court notes that Sanchez has received a COVID-19 vaccine and a booster, and that he has previously contracted COVID-19 and recovered all in the FCI Oakdale facilities. *See United States v. Lipscomb*, No. 2:18-CR-34, 2021 WL 734519, at *2 (M.D. Fla. Feb. 25, 2021) (stating that fact that defendant has received two doses of a vaccine "does not suggest BOP is taking COVID-19 lightly or not protecting" the defendant). Therefore, the Court refuses to find that FCI Oakdale II is "not effectively controlling the spread of the virus." *See Vasquez*, 2020 WL 3000709, at *3.

The Court will also add that Sanchez's age does not warrant a sentence reduction in this case.  Although the Court is not bound to the Sentencing Commission's policy statement, it is helpful for the Court to help guide its analysis.  In the relevant policy statement, the Sentencing Commission places a requirement that the defendant is at least sixty-five years old, in order for the age of the defendant to be considered as a valid basis for compassionate release.  U.S.S.G. 1B1.13 n.1(B).  Since the defendant is not sixty-five, the Court need not continue with this point.

In sum, Sanchez fails to prove that he has a valid "extraordinary and compelling" reason to warrant a sentence reduction under the § 3582(c)(1)(A)(i) framework.[4]  Under the rule of finality, federal courts may not "modify a term of imprisonment once it has been imposed" unless one of a few "narrow exceptions" applies.  *Freeman v. United States*, 564 U.S. 522, 526 (2011) (citing 18 U.S.C. § 3582(c)) (plurality op.).  Compassionate release is one of those exceptions, but a defendant must conform both to the procedural and substantive requirements of § 3582(c)(1)(A) for a court to modify a sentence.  Because Sanchez has failed to meet the controlling requirements for compassionate release set forth in § 3582(c)(1)(A)(i), the pending motion must be denied.

## CONCLUSION

It is therefore **ORDERED** that Defendant's *Pro Se* Motion to Reduce Sentence – First Step Act (Compassionate Release) (Dkt. #1888) is **DENIED.**

**IT IS SO ORDERED.**
**SIGNED this 4th day of May, 2023.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

---

[4] For the Court to grant Sanchez's request for compassionate release, the Court would have needed to conduct an analysis to ensure that the factors at 18 U.S.C. § 3553(a) warranted a sentence reduction.  However, since the Court does not find an extraordinary and compelling reason for a sentence reduction, it need not conduct any further analysis.